IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NILDA I. L.,                           )
                                       )
                 Plaintiff,            )
                                       )
         v.                            )    1:24CV303
                                       )
FRANK BISIGNANO,                       )
Commissioner of Social Security,[1]    )
                                       )
                 Defendant.            )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Nilda I. L. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.       PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on August 11, 2021, alleging a disability onset date of September 21, 2019. (Tr. at 19, 176-77)[2] Her application was denied

---

[1] The United States Senate confirmed Frank Bisignano as the Commissioner of Social Security on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #3].

initially (Tr. at 79-85, 102-06) and upon reconsideration (Tr. at 86-92, 108-12). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 124-25.) On April 28, 2023, Plaintiff, along with her attorney, attended the subsequent telephone hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 19.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 33-34), and, on February 9, 2024, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity between September 21, 2019, her alleged onset date, and September 30, 2020, which was her Date Last Insured for purposes of DIB. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 22.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> rheumatoid arthritis; asthma; irritable bowel syndrome; umbilical hernia; and Raynaud's disease[.]

(Tr. at 22.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 24-26.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with the following, additional limitations:

5

> [Plaintiff] can frequently reach, handle, finger, and feel. [She] can occasionally climb, and can frequently stoop, balance, kneel, crouch, and crawl. [Plaintiff] can tolerate no exposure to extreme cold. [She] can tolerate occasional exposure to pulmonary irritants.

(Tr. at 26.) At step four of the analysis, the ALJ determined that Plaintiff's past relevant work did not exceed her RFC. Specifically, the ALJ found that Plaintiff remained capable of performing her "past relevant work as a Customer Service Representative (DOT #239.362-014; sedentary; SVP 5; skilled)". (Tr. at 33.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 33-34.)

Plaintiff now challenges the ALJ's step four finding, contending that her work as a Customer Service Representative did not qualify as past relevant work because the Customer Service Representative position was (1) not performed at substantial gainful activity levels and (2) not performed long enough for her to learn the job. Specifically, Plaintiff first contends that her "earnings record establishes a presumption that her [past] work was not performed at substantial gainful activity levels" and that the ALJ did not make sufficient findings to rebut that presumption. Second, Plaintiff notes that the Customer Service Representative position has a Specific Vocational Preparation ("SVP") of 5, requiring "over 6 months and up to an including 1 year" to learn the job, but at the schedule and rate cited by the ALJ, she would have been in the Customer Service Representative position less than six months.

In considering these contentions, the Court notes that under the regulations, past work experience is only considered "relevant" when it is (1) work that was done within the past 15 years, (2) was substantial gainful activity, and (3) lasted long enough for [the claimant] to learn

6

to do it. 20 C.F.R. § 404.1560(b)(1).[5] The 15-year requirement encompasses the earlier of (1) the 15 years immediately prior to the disability hearing or (2) the 15 years prior to the date the claimant last met the disability insured status requirements. Social Security Ruling ("SSR") 82-62, Titles II and XVI: A Disability Claimant's Capacity to do Past Relevant Work, in General, 1982 WL 31386, at *2 (1982). Thus, in the present case, the relevant period would cover September 30, 2020 (the Date Last Insured) back to September 30, 2005 (15 years prior).[6]

When evaluating the second requirement, whether Plaintiff's work activity qualifies as substantial gainful activity ("SGA"), the regulations provide that the claimant's earnings represent the "primary consideration." 20 C.F.R. § 404.1574(a)(1). To assist in this inquiry, the regulations further establish earnings thresholds below which work generally does not qualify as SGA. See 20 C.F.R. § 404.1574(b)(2); see also POMS § DI 10501.015B (providing table of monthly SGA earnings thresholds for calendar years 1978 through 2025). In other

---

[5] The current version of 20 C.F.R. 404.1560(b)(1) provides that past work experience is work that was done within the past 5 years, rather than the past 15 years. That regulation went into effect in June 2024. See 89 Fed. Reg. 27653 (April 18, 2024). Because the decisions in Plaintiff's case were entered before June 2024, the Court considers the regulations in effect at the time of the decisions in this case.

[6] SSR 82-62 was rescinded and replaced by SSR 24-2p on June 22, 2024. See SSR 24-2p: Titles II and XVI: How We Evaluate Past Relevant Work, 89 Fed. Reg. 48479, 2024 WL 2846571 (June 6, 2024). Again, because Plaintiff's case was decided prior to that date, the Court considers the case under SSR 82-62 in effect at the time of the decision in her case. See SSR 24-2p at n.1 ("We will use this SSR beginning on its applicable date. We will apply this SSR to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date. This means that we will use this SSR on and after its applicable date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. If a court reverses our final decision and remands a case for further administrative proceedings after the applicable date of this SSR, we will apply this SSR to the entire period at issue in the decision we make after the court's remand.").
  The Court notes, however, that under SSR 24-2p, past relevant work must be performed within 5 years, rather than 15 years, prior to the Date Last Insured (or the adjudication date if the DLI is still in the future), which in this case would cover the five year period from September 30, 2020 (the Date Last Insured) back to September 30, 2015 (5 years prior). Plaintiff's work as a Customer Service Representative for the City occurred in 2014, which would appear to raise an additional issue for Defendant if SSR 24-2p were applied here. The Court need not consider the issue further, given the analysis set out above.

words, the agency's earnings guidelines set out the minimum amount a claimant must have earned to create a presumption that she performed substantial gainful activity during that year.

Finally, regarding the last of the three past relevant work requirements, whether the work lasted long enough for the claimant to learn to do it, this requirement "refers to the length of time during which the person gained job experience. It should have been sufficient for the worker to have learned the techniques, acquired information, and developed the facility needed for average performance in the job situation." SSR 82-62 at *2. The job identified in this case, Customer Service Representative, involves an SVP level of 5, meaning that the job takes "over 6 months and up to and including 1 year" to learn. DOT #239.362-014, 1991 WL 672224.

In analyzing Plaintiff's past relevant work in light of these factors and requirements, the ALJ found as follows:

> Through the date last insured, the claimant was capable of performing past relevant work as a Customer Service Representative (DOT # 239.362-014; sedentary; SVP 5; skilled). This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565). At the hearing before the undersigned, the vocational expert testified that the claimant has past relevant work as a Customer Service Representative (DOT # 239.362-014; sedentary; SVP 5; skilled). This work qualifies as past relevant work because it was performed during the last fifteen years, it was performed at substantial gainful activity levels, and it was performed for a long enough period of time for the claimant to learn the jobs. The claimant reported work as an Admin Assistant/Customer Service with a staffing agency and city from 1999 through 2017, stating that she earned $10 an hour and worked 8 hours a day, 5 days a week. (Exhibit B2E; B3E). The claimant reported this work, performed within the last 15 years, was performed well in excess of the amount of time needed to learn the job skills, as skilled work at the Special Vocational Preparation Level of 5 requires no more than 1 year to learn. (Dictionary of Occupational Titles Fourth Ed., Appendix C). The wages and hours worked reported by the claimant support the determination that this work was performed at the substantial gainful activity level. (Exhibit B2E; B3E). Therefore, this work qualifies as past relevant work. Furthermore,

8

this work was identified as past relevant work in a prior, administratively final decision by the Commissioner. (Exhibit B1A).

(Tr. at 33.)

Notably, the record in this case includes three pieces of evidence relevant to the analysis of these requirements: Plaintiff's own testimony regarding her past work (Tr. at 44-45), the Work History Report completed by Plaintiff prior to her hearing (Tr. at 197-207), and Plaintiff's earnings records for the years at issue (Tr. at 179-92).

In the Work History Report, Plaintiff entered the following description in a single entry:

> Admin Assist/customer service    Staffing agency, city    1999 – 2017

(Tr. 197.) As to that entry, Plaintiff reported that she worked 8 hours per day, 5 days per week, earning $10.00 per hour. However, Plaintiff's earnings record reflects that in the years 2002, 2003, 2007, 2008, 2009, and 2015, Plaintiff earned no income at all. The earnings record also reflects that she only worked for the City in 2014, and that she worked for a staffing agency in 2013. At the hearing, the ALJ questioned Plaintiff as follows regarding her work:

> Q	Okay. Now, one of the things that I'm supposed to do is to ask you some questions about work that you've done in the past. And I noticed that oh, back in I guess 2014 or so, you're listed as having worked with the City of Salisbury, is that right?
>
> A	Yes, Your Honor.
>
> Q	And what did you do there?
>
> A	I did process like for, I had to be sitting down and taking customers over the phone or in person, they could be taking, you know, payments for a service.
>
> Q	Okay. What kind of service were you taking payments for?
>
> A	Water service and the new contracts, water bills.

9

> Q   So, really, it was an office job, you were sitting down, and you took a lot of phone calls, did you make phone calls?
>
> A   Very rarely, it would be up there with a client that needed help or take the questions.
>
> . . . .
>
> Q   Okay. And did you have a title? Did your employer give you a name to describe what it was that you did?
>
> A   If I'm not mistaken, it was clerk.
>
> Q   So, an office clerk, okay. Now, the year before then, you're listed as having done some work for Debbie's Staffing Services, in Winston Salem, do you remember what you did for Debbie's Staffing Services?
>
> A   It was an office coordinator. Taking calls and doing a lot of paperwork for people would desire to get hired.
>
> Q   Okay. So, it was another sort of office clerk type job?
>
> A   Correct.

(Tr. at 44-45.) The ALJ did not ask Plaintiff about any work other than these two positions from 2013 and 2014. Later in the hearing, the ALJ questioned the vocational expert regarding the classifications of these jobs. The expert stated that Plaintiff's job "for the City of Salisbury" was classified by the <u>Dictionary of Occupational Titles</u> ("DOT") "as customer service representative, DOT #239.362 014, that's sedentary, SVP 5, skilled." The vocational expert provided a separate classification for the job with Debbie's Staffing Services, testifying that "for the job office for staffing, I'm going to use employment clerk, DOT #205.362 014, also sedentary, also SVP 5, and that's skilled." (Tr. at 58.) Plaintiff's earnings record reflects a total income in 2014 of $9707.50, all for her work with the City, and a total income in 2013 of $8612.35, all for her work with Debbie's Staffing Services. As Plaintiff correctly notes, the ALJ only relied upon Plaintiff's job as a Customer Service Representative at step four (see Tr.

10

at 33), which was her work for the City in 2014 with earnings of $9707.50 total, based on the testimony of the vocational expert and the earnings record.

Notably, however, the ALJ's analysis did not consider Plaintiff's earnings records when determining whether Plaintiff's work constituted SGA, despite the regulatory directive that a claimant's earnings must be the "primary consideration" at this step. 20 C.F.R. § 404.1574(a)(1). Even a cursory glance at Plaintiff's earnings from 1999 to 2017 reveals that she did not work as a Customer Service Representative throughout that time, as most years have no earnings at all, and 2014 was the only year with earnings from the City, which was the only Customer Service Representative job identified by the vocational expert. Although Plaintiff's earnings in 2014, the only year she performed this work, are the highest of any year in consideration, they still only amount to $9707.50. (Tr. at 182.) Defendant concedes that this amount, when averaged over 12 months, falls below the level of SGA for that year.[7]

The ALJ failed to acknowledge, let alone reconcile, this evidence with his finding that Plaintiff's job as a Customer Service Representative was performed at SGA levels. See Olivia S. v. O'Malley, 2024 WL 3043187, 1:23CV422 (M.D.N.C. June 18, 2024) (Auld, M.J.) (compiling the following cases: Klemens v. Berryhill, 703 F. App'x 35, 38 (2d Cir. 2017) ("[T]he ALJ merely asserted—without any discussion—that [the plaintiff] performed the job as a cleaner with sufficient earnings to raise the presumption of [SGA]. The ALJ did not, for example, find (or even allude) that [the plaintiff's] certified earnings record omitted certain income, nor did the ALJ expressly recognize the existence of (much less reconcile) the various

---

[7] For 2014, the SGA level was $1,070 per month, which would translate to $12,840.00 for the year. See POMS § DI 10501.015B (providing table of monthly SGA earnings thresholds for calendar years 1978 through 2025).

11

pieces of contradictory evidence. Moreover, the ALJ did not provide a record citation to any of the pertinent [conflicting] evidence . . . , which would have at least provided some indication that he had considered the contrary evidence. In short, based on our review of the certified administrative record, the ALJ simply failed to acknowledge relevant evidence or explain his implicit rejection of the conflicting evidence." (internal quotation marks and citation omitted)); Michael L. v. Kijakazi, No. 2:20CV6440, 2021 WL 5868326, at *4 (C.D. Cal. Dec. 9, 2021) ("Plaintiff's Earnings Statements indicate that . . . his earnings fell far below the level required to constitute [SGA]. The SSA's Earnings Report is probative evidence bearing directly on the amount of a claimant's wages. The ALJ was not permitted to disregard such evidence without explanation. The ALJ's failure to discuss why she discounted earnings evidence reported from outside government agencies in favor of Plaintiff's self-reports prevents this Court from effectively reviewing whether the ALJ's decision to do so was supported by substantial evidence and free of legal error." (internal footnote, citations, quotation marks, and brackets omitted)); Parrott v. Berryhill, No. 6:17CV558, 2019 WL 2578713, at *4 (E.D. Tex. June 24, 2019) (remanding where, as here, the plaintiff's statements on her Disability Report conflicted with her Earnings Statement, and noting that the "record contain[ed] conflicting evidence concerning whether [the p]laintiff's job as a housekeeper was SGA." "Despite the conflict, the ALJ simply stated that [the p]laintiff worked as a housekeeper at SGA levels" and "made no attempt to clear the ambiguity in the record or provide evidentiary support for his decision."); Gonzales v. Colvin, No. CV 14-835, 2016 WL 10592219, at *6 (D.N.M. Feb. 24, 2016) ("[G]iven [the plaintiff's] short work periods and limited earnings as a document specialist, the ALJ had a responsibility to evaluate whether [the plaintiff's] past work as a document specialist

12

was [SGA]. . . . The ALJ did not do so. Instead, he appeared to have relied solely on [the plaintiff's] Work History Form and testimony that she worked full time as a document specialist. Had the ALJ thoroughly reviewed the record, he would have uncovered that [the plaintiff's] reported work history and testimony failed to align with her actual earnings and, as such, his evaluation required more, including developing the record." (internal citation omitted))). Given that the ALJ failed to address or reconcile the evidence from the earnings record, it is not clear whether or how the ALJ considered that evidence, even though the earnings record should be the "primary consideration" under the applicable regulations. See Olivia S. v. O'Malley, 2024 WL 3043187, 1:23CV422 (M.D.N.C. June 18, 2024).

Defendant nevertheless contends that Plaintiff could have worked for a shorter period of time such that her earnings of $9707.50 for the year would translate to a monthly amount that exceeds the SGA. For example, Defendant hypothetically posits that Plaintiff could have worked 9 months at $1,078.61 per month, which would exceed the $1,070 per month SGA and total $9707.50 for the year. Defendant faults Plaintiff for failing to raise this issue at the hearing so that the record could be developed on this point. However, the Court must rely on the reasoning provided by the ALJ. See Olivia S., 2024 WL 3043187. In this case, the ALJ explained only that "[t]he wages and hours worked reported by the [Plaintiff] support the determination that this work was performed at the substantial gainful activity level." Looking at the record regarding "the wages and hours worked reported by" Plaintiff, Plaintiff reported working 8 hours per day, 5 days per week, at $10.00 per hour, which would total $400.00 per week. Given the $9707.50 reflected in the earnings statement, that would mean she worked for 24.25 weeks at $400.00 per week. This would indeed exceed the monthly SGA level of

13

$1,070.00 per month, and could provide a possible basis for following the ALJ's reasoning regarding the SGA amounts. However, even if the Court accepts that reasoning, 24.25 weeks is less than 6 months. As discussed above, the ALJ also found that the job "was performed well in excess of the amount of time needed to learn the job skills", but the work was at SVP 5 requiring at least 6 months and no more than 1 year to learn. If the work was performed at the SGA level based on the wages and hours worked, as indicated by the ALJ, the record would not provide substantial evidence to support the conclusion that Plaintiff had worked at the position over 6 months, and the ALJ failed to include any other explanation or analysis that would allow the Court to follow his reasoning.

The Court also notes that in the briefing, Defendant combines Plaintiff's 2013 position at the staffing agency and 2014 position at the City, repeatedly referring to Plaintiff's work as a customer service representative "for a city staffing agency." (Def.'s Br. at 4, 9.) However, the Vocational Expert clearly identified two separate positions, the Customer Service Representative at the City, and the Employment Clerk at Debbie's Staffing, and the vocational expert did not provide any testimony regarding the transferability of skills from one to another. The ALJ also did not include any discussion or analysis regarding the 2013 position of Employment Clerk with the staffing agency, and the Court cannot make the initial determination of whether or how that position might impact Plaintiff's subsequent 2014 position as Customer Service Representative for the City.[8] The Court also cannot find the

---

[8] With respect to the Employment Clerk position, Plaintiff's earnings record from 2013 reflects total annual earnings of $8612.35, which would likewise be below the SGA for 2013. In addition, at $10 per hour for 8 hours per day for 5 days per week, or $400.00 per week, Plaintiff's earnings would exceed SGA, but the total earnings of $8612.35 would reflect only 21.5 weeks of work at those wages and hours. That is also less that the time needed to learn the job of Employment Clerk, which is also SVP 5, requiring over six months but no more than 1 year to learn. The Court need not consider this further, as the ALJ did not rely on the Employment

failure harmless, as the ALJ did not include other past relevant work or an alternative step five finding on which the Court could rely.

Finally, to the extent Defendant contends that Plaintiff cannot raise this issue because she failed to raise it explicitly at the hearing, Plaintiff notes that there was no way for her to know at the hearing what past relevant work the ALJ might rely on or what the ALJ's analysis of the evidence might be, and it is the ALJ's obligation to adequately develop the record. Moreover, Plaintiff also notes that the Commissioner has previously "concede[d] that there are no statutes or regulations requiring issue exhaustion in Social Security proceedings." Probst v. Saul, 980 F.3d 1015, 1020 (4th Cir. 2020). Plaintiff further notes that she was not given any notice that she would forfeit issues not raised before the ALJ, nor was there any feasible way for her to raise challenges to issues not yet decided by the ALJ. In this context, failing to raise the issue at the hearing does not result in a waiver or forfeiture of the ability to challenge the ALJ's determination regarding past relevant work.[9]

Ultimately, the analysis of past relevant work is a decision for the ALJ, and the Court considers whether there is substantial evidence in the record to support the ALJ's decision, based on the reasoning provided by the ALJ. Here, the regulatory presumption would indicate

---

Clerk position in any event, but the Court notes again that it is for the ALJ in the first instance to explain the analysis based on the evidence in the record.

[9] Defendant also points to the fact that a prior ALJ decision also determined that at least one of Plaintiff's prior jobs constituted past relevant work. However, as the ALJ in the current decision acknowledged, he was required to "consider [the prior disability determination] as evidence and give it appropriate weight in light of all relevant facts and circumstances." (Tr. at 31.) This directive required him, among other matters, to consider all evidence relating to Plaintiff's past relevant work. That analysis required more than just the determination from the prior proceeding. Moreover, the prior determination included other positions as past relevant work, including Pharmacy Tech, such that any error regarding the Customer Service Representative position may have been harmless in the prior determination but was no longer harmless when it was the only position relied upon by the ALJ. Most importantly, the ALJ did not explain this analysis in a way that would allow the Court to trace his reasoning.

that Plaintiff's 2014 work as a Customer Service Representative for the City was below SGA based on the annual amount shown in the earnings record. The ALJ found that the work exceeded SGA based on the report of wages and hours worked, without addressing the earnings record. To the extent the ALJ concluded that Plaintiff worked 8 hours per day, 5 days per week, from 1999 to 2017 as a Customer Service Representative, the record clearly contradicts that conclusion, based on the earnings records showing no earnings for most years, and only limited earnings in 2014 for the one job identified as a Customer Service Representative position. The ALJ did not explain or reconcile that conflict. Moreover, to the extent the ALJ relied on "[t]he wages and hours worked reported," of 8 hours per day 5 days per week at $10 per hour, that record could reflect monthly income of $400/week in 2014, above the SGA, but in that case the record would not support a finding that Plaintiff worked at the position for over 6 months, long enough to learn the SVP 5 job. There certainly may be a way to reconcile and explain the determination, but that is for the ALJ to address in the first instance. Given the lack of explanation, and the evidence in the earnings record that directly contradicted the ALJ's conclusions, the Court cannot follow the ALJ's analysis, and the Court cannot find substantial evidence to support the ALJ's decision as presented.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, that Defendant's Dispositive Brief [Doc. #9] be DENIED, that

16

Case 1:24-cv-00303-TDS-JEP    Document 11    Filed 09/12/25    Page 16 of 17

Plaintiff's Dispositive Brief [Doc. #6] be GRANTED, and that this action be REMANDED for further consideration in accordance with the directives set out herein.

This, the 12th day of September, 2025.

/s/ Joi Elizabeth Peake
Joi Elizabeth Peake
United States Magistrate Judge